UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

### Case Number: 14-22115-CIV-MORENO

MIGUEL ALCARAS and BERETTA BOATS,
LTD.,,

      Plaintiffs,

vs.

HATTERAS YACHTS, INC.,

      Defendant.

_____/

## ORDER DENYING MOTION TO TRANSFER VENUE

Defendant, Hatteras Yachts, Inc., a North Carolina company, has moved to transfer venue to its home state from the Southern District of Florida. Although the Court finds there are certainly reasons why transfer would be appropriate, the Court exercises its discretion to deny the motion for the reasons set forth in this Order.

THIS CAUSE came before the Court upon the Defendant's Motion to Transfer Venue **(D.E. No. 18)**, filed on **July 24, 2014**.

THE COURT has considered the motion, the response, oral argument, and the pertinent portions of the record, and being otherwise fully advised in the premises, it is

**ADJUDGED** that the motion is DENIED.

### I. Background

This case stems from a breach of a settlement agreement that was signed in Miami, Florida between the parties. Plaintiff, Miguel Alcaras, a Venezuelan national, brings this suit for breach of a 2010 written agreement between Alcaras and Defendant Hatteras Yachts, Inc., a North Carolina

company.  Plaintiff Alcaras purchased a 2010 Hatteras Convertible 60' yacht ("original yacht") for the benefit of Plaintiff Beretta Boats, Ltd., a British Virgin Islands company with its main office in Venezuela.  Alcaras purchased the original yacht from Yachtcenter, S.A., a Hatteras dealer in Venezuela, which conducts business in Miami, Florida.

The original yacht had various defects and Hatteras agreed to replace it and deliver a new 2012 60' Hatteras ("replacement yacht") to Plaintiff in New Bern, North Carolina.  On February 12, 2010, Alcaras and Hatteras entered into a Release and Settlement Agreement at the Miami International Boat Show.  More specifically, in exchange for the replacement yacht from Hatteras, Alcaras agreed to return the original yacht to Hatteras with a free and clear title and furnish specifications for the replacement yacht.  He also agreed to pay for or arrange financing for the replacement vessel and take delivery of the replacement yacht in New Bern, North Carolina.

Construction of the replacement vessel took place in North Carolina.  During construction, Alcaras advised Hatteras that he was having difficulty securing the financing necessary to close on his purchase of the replacement yacht.  The lender on the original yacht refused to transfer financing to the replacement yacht.  Alcaras had requested that Hatteras delay the deadlines to submit the specifications and the delivery date.  By the summer of 2011, the replacement yacht was substantially complete and Alcaras was not ready to close and take delivery.  Hatteras claims it incurred substantial costs storing and maintaining the yacht pending the closing.  Eventually, the delivery date passed and Alcaras was unable to provide the necessary funding.  In 2012, Hatteras sold the replacement yacht to a third-party.  In the months following the sale, the parties communicated regarding their respective rights under the settlement agreement and with respect to the sale of the replacement yacht.

Plaintiffs filed this complaint in the Florida State Circuit Court alleging Hatteras breached the agreement by failing to give Alcaras the value of the replacement yacht. Hatteras removed the case to this Court and is moving to transfer venue to the Eastern District of North Carolina.

## II. Legal Standard & Analysis

A district court may transfer a civil action to any other district or division where it may have been brought "[f]or the convenience of the parties and witnesses, and in the interest of justice." *Perlman v. Delisfort-Theodule,* 451 Fed. App'x. 846, 848 (11th Cir. 2012) (quoting *Robinson v. Giarmarco & Bill, P.C.,* 74 F.3d 253, 260 (11th Cir.1996)); *see* 28 U.S.C. § 1404(a). However "[t]he plaintiff's choice of forum should not be disturbed unless it is clearly outweighed by other considerations." *Id.* It is the movant's burden to persuade the court that a transfer should be granted. *Id.* (citing *In re Ricoh Corp.,* 870 F.2d 570, 573 (11th Cir.1989)).

To satisfy section 1404(a), a movant must show: (1) that the action could have been brought by the plaintiff in the venue to which transfer is sought; and (2) that convenience and the interests of justice support transfer to the requested forum. *See Thermal Techs., Inc. v. Dade Serv. Corp.,* 282 F. Supp. 2d 1373, 1376 (S.D. Fla. 2003); *Cellularvision Tech. & Telecomm., L.P. v. Alltel Corp.,* 508 F. Supp. 2d 1186, 1189 (S.D. Fla. 2007) (balancing private and public interest factors to determine if transfer is justified).

### A. Could the Plaintiff have filed this action in the Eastern District of North Carolina?

Under section 1404(a), "[a]n action 'might have been brought' in a proposed transferee court if: (1) the court had jurisdiction over the subject matter of the action; (2) venue is proper there; and (3) the defendant is amenable to process issuing out of the transferee court." *Windmere Corp. v. Remington Prods., Inc.,* 617 F. Supp. 8, 10 (S.D. Fla. 1985). This standard is easily met. Neither

side disputes that the Eastern District of North Carolina had jurisdiction and that it could adjudicate this case.

### B. Does convenience and the interests of justice dictate transfer to the Eastern District of North Carolina?

Under the second prong, the Court must consider: (1) the convenience of the parties; (2) the convenience of the witnesses; (3) the relative ease of access to sources of proof; (4) the availability of process to compel the presence of unwilling witnesses; (5) the cost of obtaining the presence of the witnesses; and (6) the public interest. *Stateline Power Corp. v. Kremer*, 404 F. Supp. 2d 1373, 1380 (S.D. Fla. 2005).

Mindful that the Plaintiffs chose to file this case in this district, the Court notes that one Plaintiff is Venezuelan and the other a corporation formed in the British Virgin Islands with a place of business in Venezuela. In the context of a § 1404 motion, the Eighth Circuit has said that "[i]n general, federal courts give considerable deference to a plaintiff's choice of forum and thus the party seeking a transfer under section 1404(a) typically bears the burden of proving that a transfer is warranted." *In Re: Apple, Inc.,* 602 F.3d 909, 913 (8th Cir. 2010) (quoting *Terra Int'l, Inc. v. Miss. Chem. Corp.*, 119 F.3d 688, 695 (11th Cir. 1997)). This "general" practice of according deference, however, is based on an assumption that the plaintiff's choice will be a convenient one. *Id.* (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255–56 (1981)). When the plaintiffs, like Alcaras and Beretta Boats, hail from a foreign nation, that assumption is much less reasonable, and the risk that the plaintiff chose the forum to take advantage of favorable law or to harass the defendant increases. Accordingly, a foreign plaintiff's choice of forum "is entitled to substantially less deference." *Id.*; *Nolan Helmets, S.p.A. v. Fulmer Helmets, Inc.*, No. 95–6401–CIV, 1995 WL 789505, *2 (S.D. Fla.

Nov. 27, 1995).

### 1. Convenience of the Witnesses

The convenience of the witnesses is an important consideration to determine whether to transfer venue. Courts weighing transfer motions look to the "key witnesses" and the "significance of their testimony" to the issues in a case. *Mason v. Smithkline Beecham Clinical Labs*, 146 F. Supp. 2d 1355, 1362 (S.D. Fla. 2001). Hatteras argues its facilities and employees are located in North Carolina. Hatteras has disclosed three employees as witnesses, who live in North Carolina. In addition, Hatteras has identified one witness, former CEO Jim Meyer, who currently splits his time between Florida and North Carolina. Plaintiffs have identified two representatives of Mercantil Commercebank, who reside in Florida. At oral argument, the Defendant stipulated to the bank witnesses' testimony that the Plaintiffs were unable to secure a new bank loan because the bank discontinued that particular credit program, and the bank's decision was unrelated to Plaintiffs' credit. Plaintiffs have additionally identified three Venezuelan witnesses employed by Yachtcenter, S.A. (Hatteras yacht sales broker in Venezuela that conducts business in Miami), who have knowledge regarding the defects on the original yacht and Hatteras's breach of the settlement by improperly assessing the amount due from Hatteras in connection with the sale of the replacement yacht. Plaintiffs contend these Venezuelan witnesses regularly conduct business in Florida. At oral argument, the Court also learned that Plaintiff maintains a condominium in Miami, Florida.

Given that the witnesses in Venezuela regularly conduct work in this district and the Defendant's own employees regularly work in this district during the various boat shows, the Court is reluctant to find that the convenience of the witnesses requires transfer to North Carolina. On balance, the Court finds that this factor tips in Plaintiffs' favor. It seems more convenient for the

North Carolinian witnesses, all employees of Defendant, to travel here, especially in a case where the agreement of the parties was negotiated in Miami, Florida during the boat show.

### 2. *Ease of Access to Sources of Proof*

The Court must also consider the access to sources of proof. "[G]eneral allegations that a transfer is needed because of the location of books and records are not enough. The moving papers must show the location, difficulty of transportation and importance of the books and records." *J.I. Kislak v. Conn. Bank & Trust Co.*, 604 F. Supp. 346, 348 (S.D. Fla. 1985)(quoting *American Standard, Inc. v. Bendix Corp.*, 487 F.Supp. 254, 264 (W.D. Mo.1980)). Due to advances in technology that provide ease in copying and transferring documents, this factor is afforded little weight in the § 1404 analysis. *Silong v. U.S.*, No. 05-CV-55-OC-10GRJ, 2006 WL 948048, *3 (M.D. Fla. 2006).

Defendant has identified documents in North Carolina, but there are likewise relevant documents in Florida and Venezuela. Accordingly, this Court does not find this factor weighs in favor of transfer to North Carolina.

### 3. *Availability of process to compel unwilling witnesses and the costs of obtaining witnesses*

Absent a showing that necessary out-of-state witnesses refuse to testify and are outside of the Court's subpoena power, the presence of out-of-state witnesses does not necessitate transfer. *Stateline Power Corp.*, 404 F. Supp. 2d at 1381. Hatteras's three North Carolinian employees have not refused to testify in Florida. Accordingly, this factor does not require transfer.

The cost of witness travel is the only factor that weighs in favor of transfer to North Carolina. Defendant will have to pay for three witnesses to travel to Florida, which would not be the case if

the Court transferred venue to North Carolina. Plaintiffs have to pay for witness travel regardless of the venue, since the majority of Plaintiffs' witnesses are Venezuelan. Plaintiffs would have to pay the travel costs of the Florida witnesses to North Carolina. Although these cost considerations favor transfer, the Court does not find it sufficiently meets the movant's burden to grant the motion to transfer venue.

### 4. Public Interests

A key measure of the public interest in considering venue transfer is the case's connection to the chosen forum. *Motorola Mobility, Inc. v. Microsoft Corp.*, 804 F. Supp. 2d 1271, 1278 (S.D. Fla. 2011). The supporting rationale is to avoid juries hearing cases, which are wholly unrelated to the local interests. *Id.*; *Ford v. Brown*, 319 F.3d 1302, 1307 (11th Cir. 2003). In this case, the underlying agreement was negotiated and executed in Miami, Florida. The Settlement Agreement contemplated that a Florida bank transfer the financing from the original yacht to the replacement yacht. Defendant does concede that it conducts business in Florida and its representatives attend periodic boat shows here. Given this background, the Court cannot say the case is wholly unrelated to Florida.

Hatteras also argues the choice of law provision in the Settlement Agreement favors a forum in North Carolina. The agreement does provide that North Carolina law applies to this case. Notably, the agreement does not contain a forum selection clause. "[A] choice of law provision is not the equivalent of a forum selection clause." *Soroka v. Lee Technologies Servs., Inc.*, No. 06-CV-0710-TWT, 2006 WL 1734277, at *4 n.2 (N.D. Ga. 2006). "Choice of law, although relevant, is by no means dispositive of a motion to transfer, especially where as here, no complex issues of foreign law are presented and the outcome of the case may well turn on factual rather than

legal issues." *O'Neill v. Stanwood Corp.*, 577 F. Supp. 1001, 1003 (S.D.N.Y. 1984).  The Court

does not find that the choice of law provision requires transfer to North Carolina.  This Court is able

to apply the law of that state to resolve this breach of contract case.


DONE AND ORDERED in Chambers at Miami, Florida, this 27th day of October, 2014.


FEDERICO A. MORENO
UNITED STATES DISTRICT JUDGE


Copies provided to:

Counsel of Record

-8-