UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 14-22115-CIV-MORENO/O'SULLIVAN

MIGUEL ALCARAS and BERETTA
BOATS, LTD.,

    Plaintiffs,

v.

HATTERAS YACHTS, INC.,

    Defendant.
_____/

## ORDER

THIS MATTER is before the Court on the Plaintiffs' Motion in Limine to Admit Parol Evidence at Trial (DE# 44, 10/30/14), the Defendant's Brief Concerning the Issue of Ambiguity and Parol Evidence (DE# 48, 11/3/14) and Plaintiffs' Reply in Support of Motion in Limine to Admit Parol Evidence at Trial (DE# 51, 11/12/14).

## BACKGROUND

In 2009, plaintiff Miguel Alcaras (hereinafter "Alcaras"), through plaintiff Beretta Boats, Ltd., purchased a 60-foot convertible yacht (hereinafter the "60C") from defendant Hatteras Yachts, Inc. (hereinafter "Hatteras"). Alcaras paid a portion of the 60C's purchase price in cash and financed the remainder through a loan from Mercantil Commercebank, N.A. (hereinafter "Commercebank") in Miami, Florida. Within weeks of this purchase, Alcaras complained to Hatteras about the 60C's performance.

After months of negotiations between the parties, Hatteras agreed to take back the 60C and replace it with a yet-to-be-built, custom 60-foot yacht (the "GT60"). Hatteras also agreed to give Alcaras a credit and certain discounts to be applied

towards the GT60 and to reimburse Alcaras for the cost of fuel to transport the completed GT60 from North Carolina to Venezuela, Alcaras's residence. In turn, Alcaras agreed to provide all specifications for the GT60 to Hatteras by a certain date that was later extended multiple times, to pay any additional costs of financing the remaining balance due on the GT60 and to take delivery of the GT60 upon its completion.

On February 12, 2010, the parties memorialized their agreement in a document entitled "Release and Agreement in Settlement of All Claims" (hereinafter "Release Contract"). See Release Contract (DE# 24-2 at 8-9, 9/26/14). The Release Contract contained the following relevant provisions:

> WHEREAS, [Alcaras] has agreed to deliver the [60C], with all features originally purchased, and **transfer title free and clear of ~~any~~ *all* liens and encumbrances, *except for [Alcaras's] primary bank loan*,** to [Yachtcenter] within 10 days of the effective date of this agreement.

***

> [Alcaras] further agrees to indemnify [Hatteras and Yachtcenter] for any unknown liens or encumbrances that are later claimed against [Hatteras] as a result of [Alcaras's] use of the [60C]. [Alcaras] further agrees to **indemnify** [Hatteras and Yachtcenter][1] for any losses incurred from the failure of [Alcaras] to **promptly and correctly provide and sign off on the [60C's] title**, bill of sale, and any other instruments reasonably requested by [Hatteras and Yachtcenter], as well as any and all costs, including attorney fees, **in obtaining these instruments promptly executed, free and clear of all liens**.

***

> . . . [Alcaras] will provide specifications for the [GT60] no later than May 31, 2010, and Hatteras will have the [GT60] ready for delivery by May 15, 2011 or as soon thereafter as possible. [Alcaras] . . . further agrees that he will be responsible for the costs of any additions or modifications to the [GT60] that are not currently on the [60C] at a 15% discount from retail

---

[1] Yachtcenter is Hatteras's Venezuelan dealer.

> prices. [Hatteras] also **agrees to pay any additional taxes or costs associated with financing** and titles of the [GT60] and will take delivery of the [GT60] in New Bern, North Carolina, USA, upon its completion. **Hatteras will cooperate with [Alcaras's] bank, as requested by [Alcaras], to provide information concerning this transaction. If requested by [Alcaras], Hatteras is willing to provide [Alcaras's] bank with a written guarantee to provide the replacement boat in the said timeframe** . . . .
>
> Any costs payable by [Alcaras] to Hatteras for additions and modifications will be paid to Hatteras prior to completion and delivery.
>
> ***
>
> [Yachtcenter] agrees to transport the [60C] to a designated location in Florida, USA, and any expenses incurred will be reimbursed by Hatteras. [Yachtcenter] agrees to take no mark up on the [GT60] or any of its options and/or components and take no sales commission. **[Yachtcenter] will also assist Hatteras in the sale of the [60C] at no cost or commission to [Alcaras] or Hatteras,** other than actual costs, including 3rd party broker fees, associated with the sale of the [60C] which will be reimbursed by Hatteras.

Id. at 8 (handwritten alterations represented by italicized and stricken text; bold emphasis and footnote added). The parties do not dispute that North Carolina law governs the interpretation of this agreement as expressly stated therein: "This Release and Agreement, and each and every term and provision hereof, shall be construed in accordance with the laws of the State of North Carolina." Id. at 9.

On October 30, 2014, the plaintiffs filed the instant motion. See Plaintiffs' Motion in Limine to Admit Parol Evidence at Trial (DE# 44, 10/30/14). The defendant filed Defendant's Brief Concerning the Issue of Ambiguity and Parol Evidence (DE# 48, 11/3/14) on November 3, 2014. The undersigned held a hearing on November 4, 2014 on Hatteras's Motion for Summary Judgment (DE# 23, 9/26/14) during which the issue of parol evidence was discussed. See Transcript of November 4, 2014 Hearing (DE# 52, 11/14/14). On November 13, 2014, the plaintiffs filed their reply. See Plaintiffs'

Reply in Support of Motion in Limine to Admit Parol Evidence at Trial (DE# 51, 11/12/14). This matter is ripe for adjudication.

## ANALYSIS

The plaintiffs seek to introduce parol evidence to show that the parties intended the existing loan obligation on the 60C to remain intact pending the completion of the GT60. See Plaintiffs' Motion in Limine to Admit Parol Evidence at Trial (DE# 44, 10/30/14). Hatteras does not dispute that when the parties initially began their negotiations, the intent was for Alcaras to transfer the existing loan on the 60C to the yet-to-be built GT60. See Transcript November 4, 2014 Hearing (DE# 52 at 7, 11/14/14). However, Hatteras maintains that it communicated to Alcaras that the transfer of the loan would be a "large hurdle"[2] and the parties continued with their negotiations anyway. The defendant maintains that the Release Contract is unambiguous and therefore the Court cannot consider parol evidence in interpreting its terms.[3]

North Carolina law provides that "[w]hen the language of the contract is clear and unambiguous, construction of the agreement is a matter of law for the court . . . and

---

[2] See January 26, 2010 Email (DE# 44-3 at 14, 10/30/14).

[3] The defendant also argues that the issue has been waived because the plaintiffs failed to raise this argument in response to the defendant's summary judgment motion. See Defendant's Brief Concerning the Issue of Ambiguity and Parol Evidence (DE# 48 at 4, 11/3/14). The undersigned has thoroughly reviewed the parties' filings with respect to the summary judgment issue and although the plaintiffs did not raise the same arguments as raised in the instant motion (and in fact argued that other portions of the Release Contract were unambiguous), the plaintiffs have consistently claimed that the parties' intent was for the original loan to be transferred to the GT60. Therefore, the undersigned concludes that the parol evidence issue should not be resolved based on the plaintiffs' alleged waiver of the argument.

4

the court cannot look beyond the terms of the contract to determine the intentions of the parties . . . . However, when there is ambiguity in the language used, the intent of the parties is a question for the jury and parol evidence is admissible to ascertain that intent." Piedmont Bank and Trust Co. v. Stevenson, 339 S.E.2d 49, 52 (N.C. Ct. App. 1985) (citations omitted).

The plaintiffs argue that two provisions in the Release Contract (DE# 24-2 at 8-9, 9/26/14) "directly contradict each other" and therefore the agreement between the parties is ambiguous. See Plaintiffs' Motion in Limine to Admit Parol Evidence at Trial (DE# 44 at 6-7, 10/30/14). According to the plaintiffs, the ambiguous provisions in the Release Contract are the following:

> WHEREAS, [Alcaras] has agreed to deliver the [60C], with all features originally purchased, and **transfer title free and clear of ~~any~~ *all* liens and encumbrances, *except for [Alcaras's] primary bank loan*,** to [Yachtcenter] within 10 days of the effective date of this agreement.
>
> ***
>
> [Alcaras] further agrees to indemnify [Hatteras and Yachtcenter] for any unknown liens or encumbrances that are later claimed against [Hatteras] as a result of [Alcaras's] use of the [60C]. [Alcaras] further agrees to indemnify [Hatteras and Yachtcenter] for any losses incurred from the failure of [Alcaras] to promptly and correctly provide and sign off on the [60C's] title, bill of sale, and any other instruments reasonably requested by [Hatteras and Yachtcenter], as well as any and all costs, including attorney fees, in obtaining these instruments promptly executed, **free and clear of all liens**.

Release Contract (DE# 24-2 at 8, 9/26/14) (bold emphasis added; handwritten alterations represented by italicized and stricken text).

The plaintiffs argue that the handwritten modifications to the first paragraph (hereinafter the "Return Clause") were made "because the parties intended that the financing obligation on the [60C] remain intact pending the construction of the [GT60] in

5

order for [Alcaras] to transfer the same loan to the [GT60] upon completion." Plaintiffs' Motion in Limine to Admit Parol Evidence at Trial (DE# 44 at 6-7, 10/30/14). The plaintiffs further maintain that the Return Clause conflicts with the next paragraph (hereinafter the "Indemnity Clause") "requiring [that] title to the [60C] be delivered free and clear of all liens." Id. at 7.

The defendant responds that the Return Clause and the Indemnity Clause are not ambiguous because:

> The Return Clause merely carves out a present exception for Alcaras's existing loan on the 60C. The Indemnity Clause, however, makes Alcaras responsible for future losses sustained by Hatteras should Alcaras fail to "promptly" execute documents that are necessary for Hatteras to obtain clear title – e.g., in the event Hatteras locates a new buyer for the 60C and needs clear title to convey. Only one of these provisions (the Return Clause) refers to Alcaras's loan on the 60C from Commercebank.

Defendant's Brief Concerning the Issue of Ambiguity and Parol Evidence (DE# 48 at 8, 11/3/14).

Under North Carolina law, "[i]t is well settled that a contract is construed as a whole" and "[t]he intention of the parties is gleaned from the entire instrument and not from detached portions." Int'l Paper v. Corporex Constr., 385 S.E.2d 553, 555 (N.C. App. 1989) (citations omitted). "Individual clauses are to be considered in context" and "[a]ll parts of the contract will be given effect if possible." Id. at 555-56. "[C]ontract provisions should not be construed as conflicting unless no other reasonable interpretation is possible." Id. at 556.

The undersigned finds that the Release Contract (DE# 24-2 at 8-9, 9/26/14) is not ambiguous. The Return Clause and the Indemnity Clause do not conflict with each other. Under the Return Clause, Alcaras was required to return the 60C to Yachtcenter

6

"and transfer title free and clear of ~~any~~ *all* liens and encumbrances, *except for [Alcaras's] primary bank loan . . . .*" Release Contract (DE# 24-2 at 8, 9/26/14) (handwritten alterations represented by italicized and stricken text). What the Indemnity Clause states is that Alcaras will indemnify Hatteras and Yachtcenter "for any **unknown liens or encumbrances** that are later claimed against [Hatteras] as a result of [Alcaras's] use of the [60C]." Release Contract (DE# 24-2 at 8, 9/26/14) (emphasis added). The loan from Commercebank was a known lien on the 60C. Under the Indemnity Clause, Alcaras also agreed to indemnify Hatteras and Yachtcenter "for any losses incurred from the failure of [Alcaras] to promptly and correctly provide and sign off on the [60C's] title, bill of sale, and any other instruments reasonably requested by [Hatteras and Yachtcenter], as well as any and all costs, including attorney fees, **in obtaining these instruments promptly executed, free and clear of all liens**." Id. (emphasis added). There is nothing in the Indemnity Clause that required Alcaras to return the 60C to Yachtcenter free and clear of all liens. Alcaras was only required to "promptly and correctly provide and sign off on the [60C's] title, bill of sale, and any other instruments **reasonably requested by [Hatteras and Yachtcenter]**" and indemnify Hatteras and Yachtcenter for all costs associated with "**obtaining** these instruments promptly executed, free and clear of all liens." Id. (emphasis added). Thus, this is not a situation where one clause of the contract (the Return Clause) required Alcaras to return the 60C with the original bank loan in place and another clause of the contract (the Indemnity Clause) would make Alcaras liable for returning the 60C with an existing bank lien. As such, the plaintiffs have not shown an ambiguity in the Release Contract and may not introduce parol evidence to establish the intent of the parties.

7

The plaintiffs further argue that the Court must consider parol evidence because "neither [party's proffered] interpretation is firmly rooted in the plain language of the [Release Contact]." Plaintiffs' Reply in Support of Motion in Limine to Admit Parol Evidence at Trial (DE# 51 at 3, 11/12/14). According to the plaintiffs, "[t]he circumstances here present the quintessential ambiguity, which exists where the contract's language is reasonably susceptible to either of the interpretations asserted by the parties, leaving the Court uncertain as to which of the meanings is the proper one." Plaintiffs' Motion in Limine to Admit Parol Evidence at Trial (DE# 44 at 7, 10/30/14) (citations and internal quotations marks omitted). The problem with this argument is that the plaintiffs' interpretation of the contract is not supported by the text of the Release Contract. There is no language in the Release Contract that required Hatteras to keep the loan on the 60C in place until the construction of the GT60 was completed. There is simply no provision in the Release Contract requiring Hatteras to maintain the loan for any period of time or for the purpose of allowing Alcaras to obtain financing through a loan transfer.

The plaintiffs further note that the "[Release Contract] does not contain a merger or integration clause" and thus, "irrespective of a post[-]litigation shift in position, the early representations by Hatteras representatives . . . that availability of the existing loan obligation through the period of construction of the [GT60] was an implied condition in the [Release Contract] are admissible." Plaintiffs' Motion in Limine to Admit Parol Evidence at Trial (DE# 44 at 9-10, 10/30/14). North Carolina law is clear, absent an ambiguity *in* the contract, parol evidence in inadmissible. Piedmont Bank & Trust Co., 339 S.E.2d at 52. The plaintiffs have not shown the existence of an ambiguity.

8

The plaintiffs also argue that the Court should construe the Release Contract against the drafter, Hatteras. See Plaintiffs' Motion in Limine to Admit Parol Evidence at Trial (DE# 44 at 9-10, 10/30/14). The doctrine of contra proferentum "requires a court to construe ambiguous contract language against the drafter." Vaughan v. Celanese Ams. Corp., 339 F. App'x. 320, 328 (4th Cir. 2009). The application of this doctrine would necessitate the finding of an ambiguity which the undersigned has not found. In any event, it is well settled law that "the court, under the guise of constructions, cannot reject what the parties inserted or insert what the parties elected to omit." Weyerhaeuser Co. v. Carolina Power & Light Co., 127 S.E.2d 539, 541 (N.C. 1962).

In their reply, the plaintiffs point out that "the [Release Contract] itself provides that Hatteras "will cooperate with Releasor's [Alcaras' bank . . . to provide information concerning the transaction. If requested . . . Hatteras is willing to provide . . . the bank with a written guarantee to provide the replacement boat *in the said timeframe*." Plaintiffs' Reply in Support of Motion in Limine to Admit Parol Evidence at Trial (DE# 51 at 3, 11/12/14) (emphasis in reply brief). According to the plaintiffs, "[t]his is further written evidence in the [Release Contract] itself that financing would remain in place while the [GT60] was being built."

The above quoted language is not textual evidence in the Release Contract that the parties sought to maintain the existing loan on the 60C in place. Of note, the Release Contract does not identify any particular bank as Alcaras's bank. Thus, all the above quoted language does is require Hatteras to provide information about the Release Contract and a written guarantee of the completion date for the GT60 should Alcaras's bank (*any* bank which Alcaras solicits) require it. It does not impose an

obligation on any party to keep the loan on the 60C in place. More importantly, the text of the Release Contract does not address how Alcaras would pay for the GT60 after it was built. There are no provisions placing limits on financing terms or making Alcaras's contractual obligations contingent on his ability to transfer the original loan to the GT60 or otherwise obtain financing under the same terms as that loan. Thus, the Court finds no evidence in the text of the Release Contract to support the plaintiffs' interpretation of the parties' agreement.

## CONCLUSION

Based on the foregoing, the undersigned concludes that the Release Contract (DE# 24-2 at 8-9, 9/26/14) is unambiguous. Therefore, the intent of the parties must be determined from the text of the Release Contract. Accordingly, it is

ORDERED AND ADJUDGED that the Plaintiffs' Motion in Limine to Admit Parol Evidence at Trial (DE# 44, 10/30/14) is **DENIED**.

DONE AND ORDERED in Chambers at Miami, Florida, this 25 day of November, 2014.

_____
JOHN J. O'SULLIVAN
UNITED STATES MAGISTRATE JUDGE

Copies provided to:
All counsel of record